## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## PALM BEACH DIVISION

**MICHAEL JONES and** ,                                    **CASE NO: 22-cv-80602**
**JAMES MADU**
    *Plaintiffs,*

v.

**COUNTY OF PALM BEACH, FLORIDA**
    *Defendant.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, MICHAEL JONES AND JAMES MADU by

and through the undersigned counsel and sues the Defendant, COUNTY OF

PALM BEACH, FLORIDA (hereinafter "COUNTY "or "Defendant") and as

follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 29 U.S.C §1331, 29 U.S.C §1332,

29 U.S.C § 1343 and 29 U.S.C § 1367 in that this is a civil action arising under

42 U.S.C. § 1983, ("Section 1983"); Title VII, Civil Rights Act, 42 U.S.C. §§ 2000

et seq. as amended ("Title VII"), the American with Disabilities Act, as

amended 42 U.S.C. § 12112 *et seq.*

2.      Venue lies pursuant to 28 U.S.C. §1391(b), as Plaintiffs' claims arise out of their employment relationship with the Defendant, in that a substantial part of the events or motions giving rise to the claim occurred in this district which is located in the United States District Court for the Southern District of Florida, Palm Beach Division.

## PARTIES

3.      Plaintiff, Michael Jones, is a resident of Palm Beach County and Plaintiff, James Madu is a resident of Broward County, Florida; and at all material times were employed with the Defendant within the meaning of Section 1983, Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

4.      County of Palm Beach, Florida, Road and Bridge Department, Defendant, is the department responsible for maintaining all County-owned roads and bridges for all of Palm Beach; and all relevant times doing so in the State of Florida, in this Judicial District, with a physical address of 2555 Vista Parkway, West Palm Beach, FL 33411.  The department employs maintenance workers for the purposes of maintaining county-owned roads and bridges through Palm Beach County.

## GENERAL ALLEGATIONS

5.     At all times material, Defendant acted with malice and reckless disregard for Plaintiffs' federal and state protected rights.

6.     At all times material, the Plaintiffs were qualified to perform their job duties within the expectations of their employer.

7.     Plaintiffs have retained the undersigned counsel to represent them in this action and is obligated to pay them a reasonable fee for their services.

8.     Plaintiffs requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9.     Plaintiff Michael Jones ("Mr. Jones" or "Jones") filed charges of discrimination with the Equal Employment and Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on ("FCHR") on May 8, 2019, **Exhibit A**.

10.     On January 19, 2022, EEOC issued a Dismissal and Notice of Rights, dated July 19, 2021 to Mr. Jones.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit B**.  This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

11.     Plaintiff James Madu ("Mr. Madu" or "Madu") filed charges of discrimination with the Equal Employment and Opportunity Commission

3

("EEOC") and the Florida Commission on Human Relations on ("FCHR") on May 6, 2019 **Exhibit C** and December 17, 2019, **Exhibit D**.

12.     On January 19, 2022, EEOC issued a dismissal and Notice of Rights, dated July 19, 2021 to Mr. Madu.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit E**.  This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

## FACTUAL ALLEGATIONS

13.     Plaintiff Michael Jones is African American and was formerly employed with the Defendant.  James Madu is Asian/East Indian, and is regarded as African American, and is currently employed with the Defendant.

## MICHAEL JONES

14.     Mr. Jones was hired as an employee by the Defendant on or around July 2016.

15.     Mr. Jones was hired as a Maintenance Worker, and designated as a full-time employee, typically working forty (40) or more hours each week.

16.     Mr. Jones' immediate supervisors were Terrance Dunnaway, Maintenance Worker-Crew Supervisor, (African American); Steve Smith; Area Supervisor (Caucasian); Bryan Powell, Assistant Superintendent; (Caucasian);

4

Craig Lloyd, Superintendent (Caucasian); and Adam Faustini, Director Or Road and Bridge Department (Caucasian).

17.     Defendant employs more than five thousand (5000) employees.

18.     On or about January 17, 2019, Mr. Jones who is a dark-skinned African American and two (2) other co-workers, who also are regarded as dark-skinned, African Americans were engaged in an assigned work task, when their immediate supervisor Terrance Dunaway (hereinafter "Dunaway") told the three (3) of them, they would never advance in their positions because of their "dark skin."

19.     Dunaway went on tell Jones because of his lighter-skinned tone, he was closer to "White" and was the reason he was in a supervisory role. Dunaway referred to the three (3) workers as "field n-word" and "field slaves."

20.     Jones immediately reported this incident to supervisor, Steve Smith (hereinafter "Smith").  Smith took no action after the report by Jones and the other employees.

21.     Jones then contacted Bryan Powell, (hereinafter "Powell"), telephonically, to lodge a complaint against Dunaway.  Jones complaints were dismissed by Powell.

22.     One week after the incident, Jones and the two (2) other African American employees had a meeting with Smith, Adam Faustini (hereinafter "Faustini") and Craig Lloyd, (hereinafter "Lloyd").  During this meeting Jones and the other employees provided a detailed account of the statement of Dunaway, however in addition to the statements, Jones and the others also relayed of Dunaway's general mistreatment of them while working on his crew and a concern about disproportionate work assignments they received compared to Caucasian and Hispanic workers.

23.     During this meeting, Jones and the other employees were told to "get over the matter."  Dunaway's language was labeled a "joke," and Jones and the other employees were directed to "drop" the matter.

24.      On February 4, 2019, Jones and the other employees respectively filed Charges of Discrimination with the Equal Employment Opportunity Commission, (hereinafter "EEOC").  The charge alleged discrimination based on race.

25.     Soon after the filing of the charge, Jones and the two other employees, who previously worked together as crew members, were separated and each assigned to new work crews, while Dunaway was issued a written reprimand and returned to the same crew.

6

26.     Jones and his co-workers, who were now working with separate crew teams, were called "troublemakers" and were informed by other maintenance workers of being "watched" by members of management and others were directed to "stay away from them," referring to Jones and the co-workers who issued complaints.

27.     In February 2019, while attending a county event to celebrate employees, Jones, who was standing in a line of employees, shaking the hands of management, was rebuffed by Daryl Dawson (hereinafter "Dawson), who refused to shake the hand of Jones, when he attempted to greet Dawson. Jones observed Dawson to resume shaking the hands of other county employees after he proceeded through the line.

28.     Jones applied for a  promotion to Machine Equipment Operator III in February 2019, along with the other members of his crew who were either Caucasian or Hispanic.  After Mr. Jones made the complaint about Dunaway, he was denied the opportunity to train on the equipment required to receive the promotion, despite repeated requests to receive the same training as his new crewmembers.

29.     All of the Caucasian and Hispanic crew members received the promotion, except for Jones, who was the only African American on his crew

by that time. Jones was qualified for the promotion.  Jones was aware other crew members who received the promotion were less qualified and lacked his level of experience.

30.    Jones, when inquiring about the denied promotion, was notified the failure to  promote was because of a perceived disability due to a prior work-related injury from which he had been medically cleared to return to work.

31.    On or about March 2019, Jones was falsely accused of misplacing a set of keys in the office.  Jones was threatened with disciplinary action by Smith.

32.     On or about April 2019, Defendant also began to claim Jones was disruptive, non-compliant with work assignments, and insubordinate.

33.    Jones was subjected to close-monitoring by members of management after his complaints.

34.    On May 8, 2019, Jones filed a second charge of discrimination with the EEOC. **Exhibit A.**  In this charge, Jones complained of retaliation due to his race, disability, and being exposed to a hostile work environment by the Defendant.

35.     Jones while no longer under the direct supervision of Dunaway, was experiencing retaliation by other members of management.

36.     In 2020, due to COVID related illnesses, crew members were frequently absent, Defendant issued requests to crew members to volunteer for overtime work during several periods.  Jones applied to work overtime multiple times and was denied each time he volunteered.  He also continued to be ostracized by management.

37.     Jones suffered another work-related injury in 2020 requiring him to take intermittent leaves of absence.

38.     On February 16, 2021, Jones received a notice of proposed termination, alleging Jones could not continue in his current position due to his medical leave or inability to perform the functions of his job.

39.     Jones, who had been cleared to return to work, requested a reasonable accommodation because of Defendant's perception of Jones' inability to perform the essential duties of his position.

40.     Defendant refused to offer a reasonable accommodation to Jones. Jones was terminated on March 30, 2021.

## JAMES MADU

41.    Mr. Madu was hired as an employee by the Defendant on or around March 2015.

42.    Mr. Madu was hired as a Maintenance Worker, and designated as a full-time employee, typically working forty (40) or more hours each week.

43.    Mr. Madu's immediate supervisors were Terrance Dunnaway, Maintenance Worker-Crew Supervisor, (African American); Steve Smith; Area Supervisor (Caucasian); Bryan Powell, Assistant Superintendent; (Caucasian); Craig Lloyd, Superintendent (Caucasian); and Adam Faustini, Director Or Road and Bridge Department (Caucasian).

44.    Defendant employs more than five thousand (5000) employees.

45.    On or about January 17, 2019, Mr. Madu who is of East Asian/Indian descent but is regarded as a dark-skinned African American and two (2) other co-workers, who also are regarded as dark-skinned, African Americans were engaged in an assigned work task, when  their immediate supervisor Terrance Dunaway (hereinafter "Dunaway"), told the three (3) of them, they would never advance in their positions because of their "dark skin."

46.    Dunaway went on tell Madu, because of his lighter-skinned tone, he was closer to "White" and was the reason he was in a supervisory role.

Dunaway referred to the three (3) workers as "field n-word" and "field slaves."

47.    Madu immediately reported this incident to supervisor, Steve Smith (hereinafter "Smith").  Smith took no action after the report by Madu and the other employees.

48.    Madu then contacted Bryan Powell, (hereinafter "Powell"), telephonically to lodge a complaint against Dunaway.  Madu's complaints were dismissed by Powell.

49.    One week after the incident, Madu and the two (2) other African American employees had a meeting with Smith, Adam Faustini (hereinafter "Faustini") and Craig Lloyd, (hereinafter "Lloyd").  During this meeting Madu and the other employees provided a detailed account of the statement of Dunaway, however in addition to the statements, Madu and the others also relayed of Dunaway's general mistreatment of them while working on his crew and a concern about disproportionate work assignments they received compared to Caucasian and Hispanic workers.

50.    During this meeting, Madu and the other employees were told to "get over the matter."  Dunaway's language was labeled a "joke," and Madu and the other employees were directed to "drop" the matter.

51.     On February 4, 2019, Madu and the other employees, respectively filed Charges of Discrimination with the Equal Employment Opportunity Commission, (hereinafter "EEOC").  The charge alleged discrimination based on race.

52.     Soon after the filing of the charge, Madu and the two other employees, who previously worked together as crew members, were separated and each assigned to new work crews, while Dunaway was issued a written reprimand and returned to the same crew.

53.     Madu and his co-workers, who were now working with separate crew teams, were called "troublemakers" and were informed by other maintenance workers of being "watched" by members of management and others were directed to "stay away from them," referring to Madu and the co-workers who issued complaints.

54.     In February 2019 while attending a county event to celebrate employees, Madu, who was standing in a line of employees, shaking the hands of management was rebuffed by Dawson and Alexis White (hereinafter "White"),  who refused to shake the hand of Madu, when he attempted to greet  White.  White is a director in the Palm Beach County Road and Bridge

Department.  Madu observed both Dawson and White to resume shaking the hands of the other Palm Beach County employees.

55.    In  February 2019, Madu was approached by Smith who stated to Madu, " You need to be careful about what you say."

56.    In February 2019, Madu issued a request for new work boots through Smith.  The usual time to receive new work boots was usually four (4) to five (5) days after the request.  Madu after multiple requests received his boots three (3) weeks later.  There was no explanation from Smith or any other employee of the Defendant to account for the delay, as other members received their work boots shortly after their initial request.

57.    On or around March 2019, Madu applied for the position of Public Works Crew Chief.  A position for which he was qualified.  On June 26, 2019, Madu was not hired for the position.  Madu believes a lesser qualified crew member was chosen for the position as retaliation for his complaints.

58.    On or about March 6, 2019, Madu was accused of failing to complete a work assignment, although it had been assigned to another member of the crew.

59.    On or about April 2019, Defendant began to claim Madu was disruptive, non-compliant with work assignments, and insubordinate.

13

60.     Madu was subjected to close-monitoring by members of management.

61.     On May 8, 2019, Jones filed a second charge of discrimination with the EEOC. **Exhibit C.**  In this charge, Madu complained of retaliation due to his race, color, national origin, retaliation, and being exposed to a hostile work environment by the Defendant.

62.     On May 28, 2019, Madu, while working at a designated work site in the county, was approached by Smith and directed Madu to pick up trash on the side of the roadway for attempting to engage in a routinely scheduled break.  Madu was never directed or instructed to pick up trash at a worksite during the prior four (4) years of his employment with Defendant.

63.     July 2019, while attending an employee barbecue, Smith said to Madu "because you filed the EEOC complaint you will never be promoted by the county."

64.     On August 2, 2019, Les Brown, also a member of the Road and Bridge Department , told Madu "move on" and "stop holding bitterness against management."

65.     Also in August 2019, Smith again arrived at a work site and approached Madu accusing him of failing to engage in work assignments. Smith openly berated Madu in the presence of the other crew members.

66.     On September 6, 2019, Ivan Romero, another member of the Road and Bridge Department, told Madu that he was a "troublemaker" and the "ringleader."

67.     On November 4, 2019, Madu arrived at the worksite later than other crewmembers, after complying with a request to retrieve items from a warehouse for the day's work assignment.  Smith, who later arrived at the work site, accused Madu of arriving to work late and falsifying his work hours.  Madu was also accused of taking shortcuts while performing his work duties and was threatened with disciplinary reprimand.

68.     On  December 13, 2019, Smith said to Madu "you need to re-set." Madu, because of the actions of Smith earlier in the year, interpreted the words to mean, he needed to dismiss his EEOC matters to cease the retaliation.

69.     In December 2019, Smith accused Madu of accessing documents in his office while Madu was submitting the required daily paperwork at the designated area inside of the office of Smith.  After this incident Madu

declined to enter the office of Smith, and began to submit the daily documents to the crew chief.

70.   On December 17, 2019, because of the ongoing acts of retaliation, Madu filed a third charge of discrimination against Defendant, alleging race, color, national origin, retaliation and a hostile work environment.

71.   On March 26, 2020, Madu, who had never received any disciplinary reprimands until after his complaints of race discrimination, received a written reprimand by Lloyd and Smith alleging he failed to engage in work assignments. The reprimand was allegedly due to the reports of fellow crew members.

72.   While Madu has several years of experience, and is highly qualified for his role, he as failed to obtain any promotions, despite applying for them, since his initial complaint of discrimination in February 2019.

73.   Madu continues to be ostracized and closely monitored at the worksite.

## COUNT I

## TITLE VII – RACE DISCRIMINATION

74.     Plaintiffs, re-alleges and adopts as set forth herein, each and every allegation in Paragraphs one (1) through seventy-three (73) as if fully set forth herein.

75.     Plaintiffs are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended by the Civil Rights Act of 1991 (Title VII).

76.     Plaintiffs were employees, and the Defendant was their employer covered by and within the meaning of Title VII.

77.     By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against the Plaintiffs because of their race, in violation of Title VII.

78.     The aforementioned acts of race discrimination constitute a violation of Title VII of the Civil Rights Act, as amended for which the Defendant is liable.

79.     Defendant's unlawful discriminatory employment practices toward the Plaintiffs were intentional.

80.     Defendant's unlawful and discriminatory employment practices were done with malice or reckless indifference to protected rights of the Plaintiffs.

81.     As a result of the Defendant's unlaw discrimination, Plaintiffs have suffered and continue to suffer damages.

82.     To remedy the violations of the rights of Plaintiffs secured by Title VII, Plaintiffs requests that the Court award them the following relief:

   a.  Back pay and benefits;

   b.  Prejudgment interest on back pay and benefits;

   c.  Front pay and benefits;

   d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

   e.  Punitive damages;

   f.  Attorneys' fees and costs;

   g.  Injunctive relief; and

   h.  For any other relief this Court deems just and equitable.

## COUNT II

## **TITLE VII – DISCRIMINATION – (COLOR)**

83.     Plaintiffs re-alleges and adopts as set forth herein, each and every allegation in Paragraphs one (1) through one seventy-three (73) as if fully set forth herein.

84.     Plaintiffs are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended by the Civil Rights Act of 1991 (Title VII).

85.     By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against the Plaintiffs because of their race, in violation of Title VII.

86.     The aforementioned acts of race discrimination constitute a violation of Title VII of the Civil Rights Act, as amended for which the Defendant is liable.

87.     Defendant's unlawful discriminatory employment practices toward the Plaintiffs were intentional.

88.     Defendant's unlawful and retaliatory employment practices toward Plaintiffs were intentional.

89.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal protected right of the Plaintiffs.

90.     As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

91.     To remedy the violations of the rights of Plaintiffs secured by Title VII, Plaintiffs requests that the Court award them the following relief:

a.  Back pay and benefits;

b.  Prejudgment interest on back pay and benefits;

c.  Front pay and benefits;

d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.  Punitive damages;

f.  Attorneys' fees and costs;

g.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

## COUNT III

## <u>TITLE VII – DISCRIMINATION – (NATIONAL ORIGIN)</u>

92.  Plaintiff James Madu re-alleges and adopts as set forth herein, each and every allegation in Paragraphs one (1) through eight (8); eleven (11) through twelve (12), and forty-one (41) through seventy-three (73) as if fully set forth herein.

93.  Plaintiff Madu is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended by the Civil Rights Act of 1991 (Title VII).

94.     Plaintiff is an employee, and the Defendant was his employer covered by and within the meaning of Title VII.

95.     By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against the Plaintiffs because of his national origin, in violation of Title VII.

96.     The aforementioned acts of race discrimination constitute a violation of Title VII of the Civil Rights Act, as amended for which the Defendant is liable.

97.     Defendant's unlawful discriminatory employment practices toward the Plaintiff were intentional.

98.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal protected right of the Plaintiff.

99.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continue to suffer damages.

100.    To remedy the violations of the rights of Plaintiffs secured by Title VII, Plaintiffs requests that the Court award the following relief:

        a.  Back pay and benefits;

        b.  Prejudgment interest on back pay and benefits;

c. Front pay and benefits;

d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e. Punitive damages;

f. Attorneys' fees and costs;

g. Injunctive relief; and

h. For any other relief this Court deems just and equitable.

## COUNT IV

## <u>TITLE VII – RACE DISCRIMINATION – (RETALIATION)</u>

101.   Plaintiffs re-alleges and adopts as set forth herein, each and every allegation in Paragraphs one (1) through seventy-three (73) as if fully set forth herein.

102.   Plaintiffs are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended by the Civil Rights Act of 1991 (Title VII).

103.   Plaintiffs were employees, and the Defendant was their employer covered by and within the meaning of Title VII.

104.   Plaintiffs suffered an adverse employment action for engaging in protected activity under Title VII.  Specifically, Plaintiffs were retaliated

against by Defendant when they complained about discrimination because of their race, color, and national origin.

105.   The above-described acts of retaliation constitutes a violation of Title VII.

106.   Defendant's unlawful and retaliatory employment practices toward Plaintiffs were intentional.

107.   Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal protected right of the Plaintiffs.

108.   As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

109.   To remedy the violations of the rights of Plaintiffs secured by Title VII, Plaintiffs requests that the Court award them the following relief:

       a.  Back pay and benefits;

       b.  Prejudgment interest on back pay and benefits;

       c.  Front pay and benefits;

       d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

       e.  Punitive damages;

f.  Attorneys' fees and costs;

g.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

## COUNT V

## AMERICAN WITH DISABILITIES ACT - RETALIATION

110.  Plaintiff Jones re-alleges and adopts as set forth herein, each and every allegation in Paragraphs one (1) through ten (10), and thirteen through forty (40) as if fully set forth herein.

111.  Plaintiff Jones was an employee, and the Defendant was his employer covered by and within the meaning of American with Disabilities Act, as amended 42 U.S.C. § 12112 *et seq.*

6.  Plaintiff Jones suffered an adverse employment action for engaging in protected activity under American with Disabilities Act, as amended 42 U.S.C. § 12112 *et* seq.  Specifically, Plaintiffs was retaliated against by Defendant for requesting a reasonable accommodation for his perceived disability under the Americans with Disabilities Act, as amended by terminating Plaintiff's employment.

7.  The above-described acts of retaliation constitutes a violation American with Disabilities Act, as amended 42 U.S.C. § 12112 *et seq.*

112.   Defendant's unlawful and retaliatory employment practices toward Plaintiff Jones were intentional.

113.   Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal protected right of the Plaintiff Jones

114.   As a result of Defendant's unlawful discrimination, Plaintiff Jones has suffered and continues to suffer damages.

115.   To remedy the violations of the rights of Plaintiffs secured by the American with Disabilities Act , Plaintiffs requests that the Court award the following relief:

> a.  Back pay and benefits;
>
> b.  Prejudgment interest on back pay and benefits;
>
> c.  Front pay and benefits;
>
> d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;
>
> e.  Punitive damages;
>
> f.  Attorneys' fees and costs;
>
> g.  Injunctive relief; and
>
> h.  For any other relief this Court deems just and equitable.

## COUNT VI

## <u>42 U.S.C. §1983 – RACE DISCRIMINATION-</u>

## <u>VIOLATION OF THE EQUAL PROTECTION CLAUSE</u>

116.   Plaintiffs, re-alleges and adopts as set forth herein, the paragraphs in each and every allegation in Paragraphs one (1) through seventy (73) as if fully set forth herein.

117.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiffs to equal protections under the laws, including equal protection with respect to race.

118.   By the conduct described above, the Defendant, a public employer, deprived the Plaintiffs of the same rights as to the creation, performance and all benefits and privileges, of their contractual employment relationship in violation of 42 U.S.C. §1983.

119.   As a result of Defendant's discrimination in violation of Section 1983, the Plaintiffs were denied employment opportunities providing substantial compensation and benefits.

120.   The actions of the Defendant were intentional and deliberate while acting under color of state, local law regulations, customs, or usages.

121.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiffs.

122.   As a result of Defendant's discriminatory practices, Plaintiffs have suffered and continue to suffer damages.

123.   To remedy the violations of the rights of Plaintiffs secured by Section 1983, Plaintiffs requests that the Court award them the following relief:

      a.  Back pay and benefits;

      b.  Prejudgment interest on back pay and benefits;

      c.  Front pay and benefits;

      d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.  Punitive damages;

      f.  Attorneys' fees and costs;

      g.  Injunctive relief; and

      h.  For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

.

Date: April 18, 2022                    By: /s/Octavia Brown
                                        **Octavia Brown, Esq.,**
                                        Florida Bar Number: 0011778
                                        Octavia.brown@community-lawyer.com
                                        **Community Law, PLLC**
                                        3104 N. Armenia Avenue, STE 2
                                        Tampa, Florida 33607
                                        PH:    (813) 822-3522
                                        FAX: (863) 250-8228
                                        *Trial Attorney for Plaintiff*