UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-80602-Cannon/McCabe

MICHAEL JONES and
JAMES MADU,

    Plaintiffs,

v.

COUNTY OF PALM BEACH, FL,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss and Incorporated Memorandum of Law ("Motion") (DE 22), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 29). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

This is an employment discrimination case brought by two maintenance workers in the Palm Beach County ("County") Road and Bridge Department. The Court accepts the following facts as true. Plaintiff Jones, an African American man, worked for the County from July 2016 until March 30, 2021 (DE 21 ¶¶ 18-19, 23, 46). Plaintiff Madu, an East Asian/Indian man, began working for the County in March 2015 and continues to work there to this day (DE 21 ¶¶ 18, 47-48, 51).

### A. First Round EEOC Charges

In January 2019, Plaintiffs had a conversation with one of their supervisors, during which the supervisor used a racial epithet and told them they would never advance within the County due to their "dark skin" (DE 21 ¶¶ 23, 51). Plaintiffs lodged an internal complaint against the supervisor over this incident and thereafter had a meeting with management (DE 21 ¶¶ 26-27, 53-55). Unsatisfied with the result, on February 4, 2019, Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the County (DE 21 ¶¶ 29, 58). These charges shall be referred to as the "First Round EEOC charges" (DE 21 ¶¶ 29, 58).

After filing the First Round EEOC charges, Plaintiffs began to experience events they perceived as retaliation and discrimination. For example, in February 2019, Plaintiff Jones applied for a promotion to Machine Equipment Operator III (DE 21¶ 33). Plaintiff Jones requested specialized training for the job, but management refused his request (DE 21 ¶ 33). The County thereafter denied the promotion to Plaintiff Jones, and instead promoted less qualified white and hispanic candidates (DE 21¶¶ 33-34). When Plaintiff Jones inquired why he was not promoted, management told him he was not promoted "due to a prior work-related injury" (DE 21 ¶ 35).

In March 2019, Plaintiff Madu likewise applied for promotion to Public Works Crew Chief (DE 21 ¶ 64). The County denied the promotion to Plaintiff Madu despite his qualifications, and instead promoted less qualified white and hispanic candidates (DE 21¶ 64).

### B. Second Round EEOC Charges

These events led Plaintiffs, on or about May 8, 2019, to file a second round of EEOC charges (hereafter the "Second Round EEOC charges"), adding, among other grounds, a retaliation claim (DE 21 ¶¶ 14, 67; DE 21-1; DE 21-3). Plaintiff Madu followed this with another EEOC charge on December 17, 2019 (DE 21 ¶¶ 16, 76; DE 21-4), which the EEOC merged into his

Second Round EEOC charge (DE 21 ¶ 16). The EEOC never merged the First and Second Round charges however (DE 27 at 3-4).

After filing the Second Round charges, Plaintiffs experienced events they perceived as additional retaliation and discrimination. For example, in July 2019, a supervisor told Plaintiff Madu he would never be promoted "because [he] filed the EEOC complaint" (DE 21 ¶ 69). County supervisors also threatened Plaintiff Madu with disciplinary action based on false accusations that he failed to complete his work assignments (DE 21 ¶¶ 65-67, 73); they "openly berated" him in the presence of other crew members (DE 21 ¶ 71); they ordered him to "pick up trash on the side of the roadway," a job that had never been previously assigned to him (DE 21 ¶ 68); and they issued a written disciplinary reprimand based on a false allegation that he "failed to engage in work assignments" (DE 21 ¶ 77).

Likewise, as to Plaintiff Jones, County supervisors threatened him with disciplinary action based on false accusations (DE 21 ¶¶ 36-37, 39); they subjected him to close monitoring (DE 21 ¶ 39); and they denied his multiple requests to work overtime (DE 21¶ 42). Finally, on February 16, 2021, the County sent Plaintiff Jones a notice of proposed termination due to his "medical leave or inability to perform the functions of his job" (DE 21 ¶ 44). Plaintiff Jones requested a reasonable accommodation to allow him to perform his job, but the County refused this accommodation and proceeded with termination on March 30, 2021 (DE 21 ¶¶ 45-46).

### C. Complaint

In response to Plaintiffs' First Round charges, the EEOC issued right-to-sue letters in 2020 (DE 21 ¶¶ 29, 58). Plaintiffs elected not to bring suit following these letters (DE 21 ¶¶ 29, 58). Instead, Plaintiffs waited for the EEOC to issue right-to-sue letters in response to the Second Round charges, which letters Plaintiffs received on January 18, 2022 (DE 21 ¶¶ 15, 17; DE 21-2;

DE 21-5). Plaintiffs filed their initial Complaint ninety days later on April 18, 2022 (DE 1). Thereafter, Plaintiffs filed a First Amended Complaint on September 23, 2022, which the Court struck as unauthorized (DE 15, DE 16). Plaintiffs then filed this Second Amended Complaint ("SAC") on October 25, 2022, alleging the following counts:

| | | |
|---|---|---|
| I | | Title VII Race Discrimination |
| II | | Title VII Color Discrimination |
| III | | Title VII National Origin Discrimination |
| IV | | Title VII Retaliation, Race Discrimination |
| V | | Title VII Hostile Work Environment, Race Discrimination |
| VI | | ADA Retaliation |
| VII | | 42 U.S.C. § 1983, Race Discrimination |

(DE 21).

This Motion followed pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 22).

**II.   LEGAL STANDARD**

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

The County moves to dismiss the SAC on multiple grounds, each of which the Court will address in turn.

### A. Exhaustion & Timeliness

The County first urges dismissal based on the timeline of Plaintiffs' efforts to exhaust their administrative remedies with the EEOC. Prior to bringing a claim under Title VII, a plaintiff must "exhaust certain administrative remedies." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). The administrative process begins "by timely filing a charge of discrimination" with the EEOC. *Id.* The statute then affords the EEOC an opportunity to investigate the charge and attempt to mediate a conciliation agreement, after which, the EEOC issues a notice to the plaintiff, commonly referred to as a "right-to-sue letter." 42 U.S.C. § 2000e-5(f)(1). A plaintiff must file suit within ninety days of "receipt" of the right-to-sue letter. *Id.*

Here, Plaintiffs filed two rounds of EEOC charges, and the EEOC issued two rounds of right-to-sue letters. Plaintiffs, by their own admission, elected to file suit only on the Second Round charges (DE 21 ¶¶ 15, 17, 29, 58). Based on this timeline, the County argues Plaintiffs (1) failed to exhaust their administrative remedies for any claims set forth in the First Round charges; and (2) missed the deadlines to file suit in response to the Second Round charges. The Court addresses each argument below.

#### 1. Scope of Second Round EEOC Charges

The County first argues that, since Plaintiffs chose not to file suit after receiving their First Round right-to-sue letters, Plaintiffs forfeited any right to bring suit over the issues raised in those

5

charges. Plaintiffs partly agree with this proposition and concede this case involves only the Second Round charges (DE 27 at 3-5). Plaintiffs explain that they included the facts surrounding the First Round charges in the SAC solely for context since the First Round charges form part of the basis for their subsequent retaliation claims (DE 27 at 4).

Building on this logic, the County argues that the scope of the SAC must be limited solely to the scope of the Second Round charges. The County further argues that the Second Round charges alleged *no claims other than retaliation* and, hence, this Court must dismiss all claims in the SAC other than Counts IV and VI, the retaliation counts. As to all other counts, the County argues, Plaintiffs failed to exhaust their administrative remedies prior to filing suit (DE 22 at 3-5).

The Court disagrees. The purpose of the exhaustion requirement is to afford the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (citation omitted). Under Eleventh Circuit caselaw, therefore, the scope of a Title VII complaint must be limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280; *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (noting that allegations of a Title VII complaint may encompass any kind of discrimination "like or related" to the allegations contained in the EEOC charge). The Eleventh Circuit has cautioned, in this regard, that "the scope of an EEOC complaint should not be strictly interpreted." *Gregory*, 355 F.3d at 1280 (citation omitted).

Here, Plaintiffs' Second Round EEOC charges checked the boxes not only for "retaliation," but also for discrimination based on "race," "color," "national origin," and "disability" (DE 21-1 at 2-3; DE 21-3 at 2-3; DE 21-4 at 2-3). Likewise, the charges themselves alleged:

6

> I believe Respondent continues to engage in discrimination against me because of my race (black), color (dark skinned), *and* retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and in violation of the American with Disabilities Act (ADAAA).

(DE 26-1) (emphasis added).

> I believe Respondent continues to engage in discrimination against me because of my race (black), color (dark skinned), national origin (Trinidadian-American) *and* retaliation in violation of Title VII of the Civil Rights Act of 1964.

(DE 26-3) (emphasis added).

> I believe the Respondent continues to engage in discrimination against me because of the filing of my previous EEOC charges: 510-2019-01854 and 510-2019-4338, my race (black), color (dark skinned), *and* retaliation in violation of Title VII of the Civil Rights Act of 1964.

(DE 26-4) (emphasis added).

Based on these allegations, the Court finds the Second Round charges might reasonably have led the EEOC to investigate issues other than retaliation, including the non-retaliation issues framed by the SAC. As such, the Court declines to dismiss any portion of the SAC on the grounds that it exceeds the scope of the Second Round EEOC charges. *See Gregory,* 355 F.3d at 1280 (noting that courts should be "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII"); *Etienne v. All Seasons in Naples, LLC*, No. 2:22-cv-64, 2022 WL 1136613, at *2 (M.D. Fla. April 18, 2022) (denying motion to dismiss based on scope of EEOC charge where "retaliation claim could be reasonably expected to grow from [plaintiff's] discrimination charge").

### 2. Timeliness

The County next urges the Court to dismiss the SAC because Plaintiffs missed the deadline to file suit after receiving their Second Round right-to-sue letters (DE 22 at 6-8). Specifically, Title VII imposes a ninety-day time limit to file suit upon "receipt" of the right-to-sue letter. 29

7

U.S.C. § 626(e). Here, the Second Round right-to-sue letters bear dates of June 22, 2021, and July 19, 2021, respectively (DE 21-2; DE 21-5). Plaintiffs did not file suit, however, until April 18, 2022 (DE 1). Based on these dates, the County argues Plaintiffs missed the deadline and the case must be dismissed.

The Court disagrees. The ninety-day time limit does not begin to run until "actual receipt" of the right-to-sue letter. *Kerr v. McDonald's Corp.*, 427 F. 3d 947, 951(11th Cir. 2005). Here, although the letters bear dates in June and July 2021, the SAC alleges Plaintiffs did not receive the letters until January 18, 2022, when an EEOC employee emailed the letters to Plaintiffs' counsel following an inquiry regarding the case (DE 21 ¶¶ 15, 17; DE 21-2; DE 21-5). The EEOC employee explained as follows:

> Good morning. Please find a copy of two (2) original notices of right to sue enclosed. If this is your *first receipt thereof*, the 90 days begins to run receipt of each notice.

(DE 21-2; DE 21-5) (emphasis added).

The SAC further alleges that Plaintiffs filed suit "within ninety (90) days of the receipt of" the right-to-sue letters (DE 21 ¶¶ 15, 17). Indeed, Plaintiffs filed this case on April 18, 2022, exactly ninety days from the EEOC email (DE 1). Accepting these facts as true, which the Court must, Plaintiffs met the deadline for filing suit.

The County argues the Court should disregard these allegations and instead apply a presumption that Plaintiffs received the letters no later than three days after they were dated (DE 22 at 6). In support, the County cites *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999), a case decided on summary judgment, where the undisputed facts showed the EEOC attempted to deliver a right-to-sue letter to a plaintiff by certified mail, and the U.S. Postal Service left a notice of that attempted delivery at the plaintiff's residence. *Id.* In dismissing the

8

case, the Eleventh Circuit explained that "a plaintiff is entitled to a reasonable time to pick up the letter upon a receipt of a notice of delivery." *Id.* at 1342. The Court found that "a three-day period, analogous to the federal rule governing time for taking action after service by mail, *see* Fed. R. Civ. P. 6(e), provides an appropriate period for a plaintiff to act to receive an unsuccessfully delivered letter." *Id.*

*Zillyette* does not control here. The Court has no facts before it other than the allegations of the SAC, which the Court must accept as true. Those allegations indicate that Plaintiffs received their right-to-sue letters on January 18, 2022 (DE 21 ¶¶ 15, 17; DE 21-2; DE 21-5). If the County wishes to challenge these factual allegations, it may do so at summary judgment. *Cf. Kerr*, 427 F. 3d at 947 (resolving "actual notice" issue at the summary judgment stage); *Zillyette*, 179 F.3d at 1337 (same). In the meantime, the Motion should be denied on this ground.

### B. Failure to State a Claim

The County next argues that every count of the SAC fails to state a claim upon which relief can be granted. The Court will address each count in turn.

#### 1. Counts I & II – Title VII Race & Color Discrimination

Counts I and II allege race and color discrimination in violation of Title VII, which prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To make out a prima facie case of racial discrimination, a plaintiff must allege facts showing: (1) he belongs to a protected class; (2) he was qualified to do a job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). A plaintiff need not necessarily establish a prima facie case to survive a motion to dismiss, but he must nevertheless satisfy the pleading

requirements of *Iqbal* and *Twombly* by pleading a plausible case of discrimination. *See Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012); *Melendez v. Town of Bay Harbor Islands*, No. 14-22383-CIV, 2014 WL 6682535, at *4 (S.D. Fla. Nov. 25, 2014) (noting that "a plaintiff is not necessarily required to establish all the elements of a prima facie case under *McDonnell Douglas* in his complaint to survive a motion to dismiss").

The County argues these counts should be dismissed because Plaintiffs failed to allege facts to satisfy the third element of the prima facie case, namely, that Plaintiffs suffered "adverse employment actions." The County correctly points out that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). "While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." *Anduze v. Fla. Atl. Univ.*, 151 F. App'x 875, 878 (11th Cir. 2005) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). Actionable conduct includes "termination, failure to hire, or demotion." *Blue v. Dunn Const. Co., Inc.*, 453 F. App'x 881, 884 (11th Cir. 2011).

The Court has reviewed the allegations here and find them sufficient to survive dismissal. Plaintiffs allege the County denied them promotions based on their race and color. Specifically, Plaintiff Jones alleges that, in February 2019, he applied for promotion to Machine Equipment Operator III, that he requested specialized training necessary for the job, but management refused, that he did not receive the promotion, and that less qualified white and hispanic employees received the promotion instead (DE 21 ¶ 33). Plaintiff Jones also alleges the County later terminated him in March 2021 (DE 21 ¶ 46). Plaintiff Madu likewise alleges that, in March 2019, he applied for

promotion to Public Works Crew Chief position, that the County did not promote him despite his qualifications, and that a less qualified hispanic candidate received the promotion instead (DE 21 ¶ 64).

Courts have long recognized that lost promotions and terminations qualify as "adverse employment actions" in Title VII cases. *See Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) ("The Supreme Court has defined an adverse employment action as follows:  A tangible employment action constitutes significant change in employment status such as hiring, *firing*, *failing to promote,* reassignment with significantly different responsibilities or a decision causing a significant change in benefits.") (cleaned up) (emphasis added); *Mann v. Miami-Dade Cnty. Corrs. & Rehab.*, No. 09-22456-civ, 2010 WL 11426147, at *6 (S.D. Fla. July 27, 2010) (finding that "denial for promotion amounts to a materially adverse action").

The Court notes the SAC appears to attribute these adverse employment actions, simultaneously, to race discrimination (DE 21 ¶ 81), to color discrimination (DE 21 ¶ 90), to national origin discrimination (DE 21 ¶ 101), and to retaliation (DE 21 ¶¶ 110, 127).  The Federal Rules of Civil Procedure allow plaintiffs to allege overlapping, alternative, and even inconsistent theories of liability.  *See* Fed. R. Civ. P. 8(d)(2)-(3).  As such, the Court recommends the Motion be denied as to Counts I and II.

### 2. Count III – Title VII National Origin Discrimination

Count III alleges Title VII discrimination based on "national origin" in violation of 42 U.S.C. § 2000e-2(a)(1).  The County seeks dismissal of this count for failure to allege facts to show a prima facie case of discrimination (DE 22 at 12).  In response, Plaintiffs do not object to dismissal (DE 27 at 10).  As such, the Court recommends the Motion be granted as to Count III.

### 3. Count IV – Title VII Retaliation

Count IV alleges Title VII retaliation in violation of 42 U.S.C. § 2000e-3(a), which make it unlawful for an employer to discriminate against any of his employees because he has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." To make out a prima facie case of retaliation, a plaintiff must allege facts showing: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford*, 529 F.3d at 970 (citation omitted). "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (cleaned up).

The County argues the count should be dismissed because Plaintiffs failed to allege facts to show any of the three elements of a prima facie case. The Court disagrees. As to element one, the SAC alleges Plaintiffs engaged in "protected activity" by filing multiple EEOC charges (DE 21 ¶¶ 14, 16, 29, 40, 58, 67, 76). As to element two, the SAC alleges Plaintiffs suffered "adverse employment actions" by way of lost promotions and a termination (DE 21 ¶¶ 33, 46, 64). As to element three, the SAC alleges sufficient facts to show a causal nexus because a County manager told one of the Plaintiffs "because you filed the EEOC complaint you will never be promoted by the county" (DE 21 ¶¶ 64, 69). The Motion should be denied as to Count IV.

### 4. Count V – Title VII Hostile Work Environment

Count V alleges a Title VII hostile work environment claim. To establish a prima facie case of hostile work environment, a plaintiff must allege facts showing: (1) the plaintiff belongs

12

to a protected group; (2) the plaintiff was subject to "unwelcome" harassment; (3) the harassment complained of was based on his membership in the protected group; (4) the harassment affected a "term, condition, or privilege" of employment in that it was "sufficiently severe and pervasive to alter the condition of [the victim's] employment and create an abusive working environment"; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir. 1987); *see also McQueen v. Ala. Dep't of Transp.*, 769 F. App'x 816, 822 (11th Cir. 2019).

The County argues Count V should be dismissed because Plaintiffs failed to allege facts to show elements two through five. The Court agrees the SAC fails to satisfy element three, namely, that the County subjected Plaintiffs to a hostile environment "based on" their race. The Court has carefully reviewed the allegations of the SAC and finds them insufficient to support a causal nexus between Plaintiffs' race and the County's allegedly hostile treatment of them. Instead, the SAC alleges facts that show the County's actions were motivated, not by Plaintiffs' race, but by their protected activities of filing of multiple EEOC charges (DE 21 ¶¶ 31, 60, 69, 70, 73).

In this regard, certain portions of the SAC suggest that Plaintiffs attempt to bring a claim for "retaliatory hostile work environment," a version of a retaliation claim. *See Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012) (recognizing retaliatory hostile work environment as a viable claim under Title VII); *see also Malone v. Mr. Glass Doors & Windows Mfg.*, LLC, No. 21-cv-24263, 2022 WL 3159876, at *9 (S.D. Fla. 2022) ("A retaliatory hostile work environment claim is a type of retaliation claim."), *R. & R. adopted*, 2022 WL 3154198 (S.D. Fla. Aug. 08, 2022). The language of Count V itself, however, alleges a hostile work environment based on Plaintiffs' membership in a "protected class," not based on their protected activities (DE 21 ¶ 117).

To the extent Plaintiffs attempt to embed a retaliatory hostile work environment claim within Count V (or Count IV), the Court finds the SAC improper. Plaintiffs must separate distinct legal theories into separate counts, so that the County has fair notice of the claims and the Court can properly adjudicate them. *See Okwen v. Am. Mar. Officers Plans*, No. 15-60370-CIV, 2015 WL 3904991, at *8 (S.D. Fla. June 25, 2015) ("Stating claims of Title VII discrimination, retaliation, and hostile work environment claims each require distinct, separate elements. Thus, in order to state claims of these distinct, separate issues, Plaintiff must plead each count separately."). At present, neither the County nor the Court can discern whether Plaintiffs claim the allegedly hostile work environment was motivated by Plaintiffs' race, by their protected activities, or by both. For this reason as well, the Motion should be granted as to Count V.

### 5. Count VI – ADA Retaliation

Count VI alleges an ADA retaliation claim violation of 42 U.S.C. § 12203(a), which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." Courts analyze ADA retaliation claims under the same framework as Title VII retaliation claims. *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 26 (11th Cir. 2009). To establish a prima facie case of ADA retaliation, a plaintiff must allege facts that show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events. *Id.*

The Court finds this count should be dismissed for multiple reasons. As a preliminary matter, the SAC fails to allege facts that show Plaintiff Jones suffered from a qualifying "disability," which the ADA defines as including (A) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," (B) "a record of

such impairment;" or (C) "*being regarded as having such an impairment*." 42 U.S.C. § 12102(1)(A)-(C) (emphasis added). Here, Plaintiff Jones apparently relies on prong (C), as he alleges the County "perceived" him as having a disability (DE 21 ¶¶ 35, 127). *See Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004) ("Under the 'regarded as' [disabled test], a person is 'disabled' if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception.").

Even under prong (C), however, "the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual." *Id.* The ADA defines "major life activity" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Here, the SAC alleges almost nothing about the nature of Plaintiff Jones's injuries, his medical condition, how and why his medical condition limited (or failed to limit) his ability to carry out major life activities, or how and why the County came to the perception that he suffered from a disability. The Complaint simply alleges – in barebones fashion – that the County "perceived" him as having a disability (DE ¶¶ 35, 127). These allegations fail to satisfy Rule 12(b)(6). *See Twombly*, 550 U.S. at 555.

Next, the SAC alleges almost nothing about the nature of Plaintiff Jones's job duties, how or why his medical condition limited (or failed to limit) his ability to perform those job duties, the nature of the accommodation he requested, or why it was a "reasonable" request. Moreover, a request for ADA accommodation does not, in all circumstances, qualify as "statutorily protected expression" for purposes of a retaliation claim. To qualify, a protected expression must "oppose" an unlawful ADA practice within the meaning of 42 U.S.C. § 12203(a). Unless the request opposes

an unlawful practice, a defendant's mere denial of that request cannot constitute "retaliation," although it may constitute "discrimination," a separate and distinct legal claim, which must be alleged as a separate and distinct count. As another court in this district explained:

> According to the Eleventh Circuit, the denial of an ADA accommodation request relates to a discrimination claim, not a retaliation claim. … In other words, the denial of requested accommodations may be discriminatory, but it is not retaliatory.

*Ramos v. Univ. of Mia.*, No. 21-cv-22151, 2021 WL 4949160, at *5 (S.D. Fla. Oct. 25, 2021) (citing *Calvo v. Walgreens Corp.*, 340 F. App'x 618, 625-26 (11th Cir. 2009)); *see also Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (recognizing that a request for reasonable accommodation "may" satisfy the first element for an ADA retaliation claim).

Here, the SAC alleges no facts to support a plausible inference that Plaintiff Jones's request for accommodation qualified as a "protected expression" for purposes of a retaliation claim. Indeed, the SAC does not even disclose the contents of the request itself. As such, the SAC fails to give rise to any plausible inference that the requested accommodation "opposed" an unlawful employment practice within the meaning of 42 U.S.C. § 12203(a).

Finally, the SAC fails to allege sufficient facts to show a plausible nexus between Plaintiff Jones's request for accommodation and the County's decision to terminate him. In particular, based upon the SAC's allegations, it appears the County made a preliminary decision to terminate Plaintiff Jones *before* he made his ADA request (DE 21 ¶¶ 42-44). Based on this timeline, no causal nexus can exist between the two events. For this reason as well, the Court recommends the Motion be granted as to Count VI.

### 6.   Count VII -- § 1983 Race Discrimination

Finally, Count VII alleges race discrimination in violation of 42 U.S.C. § 1983, which creates a cause of action against persons who, acting under color of state law, deprive another of a

right, privilege or immunity secured by the Constitution, laws, or treaties of the United States. Here, Plaintiffs allege the County violated their Fourteenth Amendment rights under the equal protection clause by discriminating against them based on their race (DE 21 ¶¶ 134-36). To demonstrate liability against a municipal entity such as the County, a plaintiff must do more than merely show the municipality employed persons who violated a plaintiff's rights, as the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691 (1978). "[A municipality] is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the [municipality] itself is the wrongdoer." *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

To that end, in *Monell* and its progeny, the Supreme Court has defined very narrow circumstances under which a municipality can be held liable under 42 U.S.C. § 1983. In this case, Plaintiffs have identified only one recognized theory or municipal liability, i.e. the "custom and practice" theory (DE 27 at 14-15). Under that theory, a municipality can be held liable for constitutional injuries that result from a municipal custom or practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). As the custom or practice must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) ("[T]he plaintiff must allege a 'pattern' of [constitutional violations] including specific facts of numerous incidents[.]").

Here, the SAC fails to allege facts that show a widespread custom or practice of race discrimination by the County. Indeed, the SAC alleges no facts beyond Plaintiffs' own experiences. *See Scott v. Miami-Dade Cnty.*, No. 13-civ-23013, 2016 WL 9446132, at *4 (S.D. Fla. Dec. 13, 2016) (dismissing § 1983 claim where "Plaintiff alleges facts only about his own case, and fails to allege a single fact involving other instances of alleged constitutional violations resulting from the same allegedly inadequate policies and procedures"); *Asia v. City of Miami Gardens*, No. 14-20117-CIV, 2016 WL 739656, at *8 (S.D. Fla. Feb. 25, 2016) ("Plaintiff has failed to present any evidence of prior incidents of constitutional injuries similar to his ... and his own experience with the City's police officers is insufficient to establish a custom or practice."); *Paylan v. Bondi*, No. 8:15-cv-1366-T-36AEP, 2017 WL 9398657, at *20 (M.D. Fla. Feb. 28, 2017) ("But Paylan has submitted no additional facts, beyond those alleged in the Second Amended Complaint about her own situation, to support allegations that a widespread practice of false arrests exists."). The Court therefore recommends the Motion be granted as to Count VII.

## IV.   RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**, as follows:

1. The Motion should be **DENIED** as to Count I.
2. The Motion should be **DENIED** as to Count II.
3. The Motion should be **GRANTED** as to Count III.
4. The Motion should be **DENIED** as to Count IV.
5. The Motion should be **GRANTED** as to Count V.
6. The Motion should be **GRANTED** as to Count VI.
7. The Motion should be **GRANTED** as to Count VII.

8. The undersigned further recommends that all dismissals ordered here be **WITHOUT PREJUDICE** with leave to file a Third Amended Complaint within ten (10) days of the United States District Judge's ruling on this Report and Recommendation. The Court has not previously ruled upon any version of Plaintiffs' claims. Accordingly, as to all counts dismissed here, Plaintiffs should be afforded one further opportunity to attempt to state a claim.

The parties shall have fourteen days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 7th day of March 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE